IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2011 MAY 12 P 4: 20

CLERK
SO. DIST. OF GA.

ROOSEVELT MEALING, JR.,  )
                        )
       Plaintiff,       )
                        )
v.                      )    CV 110-123
                        )
GEORGIA DEPARTMENT OF   )
JUVENILE JUSTICE and AUGUSTA )
YOUTH DEVELOPMENT CAMPUS, )
                        )
       Defendants.      )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP") in the above-captioned Title VII case. Because Plaintiff's complaint was filed IFP, it must be screened to protect potential Defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) *(per curiam)*, but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i) & (ii).

Accordingly, the Court reviewed Plaintiff's original complaint in conformity with the IFP statute. Because of pleading deficiencies, Plaintiff was directed to file an amended complaint. (Doc. no. 4.) Plaintiff filed his amended complaint, and later filed a motion seeking the Court's permission to further supplement that amended complaint. (Doc. nos. 8, 10.) The

Court granted in part Plaintiff's motion, and ordered him to submit several specific documents from the Equal Employment Opportunity Commission ("EEOC") so that the Court could construe those documents together with Plaintiff's amended complaint in order to screen Plaintiff's claims. (See doc. no. 11.) Specifically, the Court explained that it required the EEOC documents in order to determine if Plaintiff's claims are timely. (Id. at 2.) Plaintiff submitted the EEOC documents as ordered (doc. no. 12), and it is those documents together with Plaintiff's amended complaint (doc. no. 8) that the Court will now screen. For ease of reference, the Court will refer to the combined EEOC documents and amended complaint as "the complaint."

## I. SCREENING THE COMPLAINT

### A. Exhaustion/ Timeliness of Plaintiff's Claims

Plaintiff has named the Georgia Department of Juvenile Justice ("DJJ") and the Augusta Youth Development Campus ("AYDC") as Defendants in this case. (Doc. no. 8, p. 1.) Plaintiff states that he worked for AYDC, which is operated by the DJJ, for four years, and it was during that time that he was subject to sexual harassment, hostile work environment, and retaliation. (See id. at 4-5, 7-9.)

In order to bring a lawsuit based upon alleged violations of Title VII, a plaintiff must first exhaust his administrative remedies by timely filing a charge with the EEOC based on those alleged violations. See Gregory v. Georgia Dep't of Human Res., 355 F.3d 1277, 1279-80 (11th Cir. 2004) (*per curiam*). The purpose of this requirement is to give the EEOC the first opportunity to investigate the allegations so that it can seek a resolution through voluntary compliance and conciliation. Id. at 1279. If the EEOC decides not to pursue the

allegations in a submitted charge, it will send the individual who filed the charge a "right to sue" letter informing him that he has 90 days from the receipt of the letter to file suit based on that charge in state or federal court. Once the 90 day deadline has passed, any claims based on the allegations made in the EEOC charge are time-barred from being filed as part of a suit. See 42 U.S.C. § 2000e-5(f)(1).

The EEOC documents that Plaintiff submitted indicate that he filed three separate charges with the EEOC concerning his employment with AYDC and the DJJ. (Doc. no. 12, pp. 8-12.) Here, Plaintiff received the right to sue letter from his first charge on January 23, 2009, and therefore, his right to sue based on that charge is barred by the 90 day time limit set forth in 42 U.S.C. § 2000e-5(f)(1). (See id. at 8.) Plaintiff filed his second charge on December 11, 2009, and received the right to sue letter on December 1, 2010- over two months after he filed the instant action.[1] (Id. at 9, 12.) Therefore, any claims based on Plaintiff's second charge are timely filed. The second charge complains of acts of harassment and discrimination occurring between January 23, 2009 and June 22, 2009.

---

[1] A Plaintiff is required to have received his right to sue letter before filing suit based on the allegations in the corresponding charge. Forehand v. Florida State Hosp. at Chattahoochee, 89 F.3d 1562, 1567-68 (11th Cir. 1996). However, the Eleventh Circuit has held that such a requirement is a statutory requirement and not a jurisdictional requirement, and is therefore subject to equitable modification. Id. at 1568 (citing Pinkard v. Pullman-Standard, 678 F.2d 1211, 1219 (5th Cir. Unit B 1982). The main roadblock to equitable modification is a showing that a plaintiff failed to cooperate with the EEOC. See Forehand, 89 F.3d at 1570. Additionally, a plaintiff's failure to satisfy this requirement can be cured by providing proof that the right to sue letter was received after the suit was filed and prior to it being dismissed. See Taylor v. Florida State Fair Auth., 875 F. Supp. 812 (M.D. Fla. 1995). As Plaintiff has since provided a copy of his right to sue letter, and there is no indication that he has failed to cooperate with the EEOC, he may proceed in this action with claims based upon his second EEOC charge.

3

Finally, Plaintiff filed his third charge on June 11, 2010, and received the right to sue letter on June 22, 2010, giving him until September 20, 2010, the very day he filed this case, to file suit based on that charge. (See id. at 10; doc. no. 1.) The third charge specifically alleges that Plaintiff was fired on June 4, 2010, out of retaliation. As such, any claims based on this allegation are timely filed.

It is not clear from Plaintiff's complaint what allegations were made in his first EEOC charge. However, it is clear that any claims based on events occurring prior to January 23, 2009, are barred from this action. As indicated above, Plaintiff's second charge only deals with events occurring between January 23, 2009, and July 22, 2009, whereas his third charge only deals with Plaintiff's firing, which occurred on June 4, 2010. (See id. at 9-10.) Therefore, any allegations based on events occurring before January 23, 2009, were either made in Plaintiff's first charge or have not been filed in a charge with the EEOC. Thus, any claims based on events that occurred before January 23, 2009, are either time-barred or unexhausted. This includes all claims in paragraphs 1-17 of Plaintiff's complaint. (Doc. no. 8, pp.7-8.)

### B. Facts Alleged

Plaintiff alleges that, from May 2006 through July 2007, he was subjected to sexual harassment by "K. Strowbridge," a female superior employed by the DJJ, who demanded sexual favors from Plaintiff in order for him to keep his job. (Id. at 5, 7.) Plaintiff states that Strowbridge threatened to have him fired in February 2008, and again in May 2010, and stated that, if Plaintiff was not on her "team," he would be fired. (Id. at 8-9.) Plaintiff further avers

4

that, between May 2006 and July 2007, he informed several other DJJ employees of the harassment including John Brady, the director of AYDC, Cassandra Lawson, Director of Equal Employment Opportunity at the DJJ, and the "Central Office." (Id. at 5, 8-9; doc. no. 12, p. 8.)

Plaintiff also claims that from January to July of 2009, he was harassed by several supervisors, had a portion of his pay withheld, had a request for leave denied, and was also denied a promotion. (Doc. no. 12, p. 9.) Plaintiff also claims that he experienced a delay of several hours before receiving medical care when he injured his back at work. (Doc. no. 8, p. 9.) Plaintiff alleges that other employees "go to the doctor in [minutes]," and that the delay in his medical care occurred because Strowbridge refused to assist with the required paperwork. (Id.) Plaintiff alleges that he was retaliated against and eventually fired because he filed a sexual harassment claim with the DJJ and because he raised complaints of discrimination. (Id.; doc. no. 12, pp. 10, 25.) In fact, Plaintiff alleges that he last complained of discrimination on June 1, 2010, and was fired on June 4, 2010. (Doc. no. 12, p. 10.)

### C. DISCUSSION

#### i. Barred Claims

Although Plaintiff's allegations arguably satisfy the elements for both *quid pro quo* sexual harassment, Pipkins v. Temple Terrace, 267 F.3d 1197, 1199-1200 (11th Cir. 2001),[2] and hostile work environment, Webb-Edwards v. Orange Cnty. Sheriff's Dep't., 525 F.3d

---

[2]To establish a prima facie case of *quid pro quo* sexual harassment under Title VII, a plaintiff must show: 1) that he belongs to a protected group; 2) that he has been subject to unwelcome sexual harassment; 3) that the harassment was based on his sex; 4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment; and 5) that there is a basis for holding the employer liable. Pipkins, 267 F.3d at 1199-1200 (citations omitted).

5

1013, 1026 (11th Cir. 2008),[3] those claims are barred.

As explained, *supra*, in order to file a suit regarding alleged violations of Title VII, a plaintiff must first exhaust his administrative remedies by filing a charge addressing those violations with the EEOC, and then file his suit within 90 days of receiving his right to sue letter from the EEOC. See Gregory, 355 F.3d at 1279-80; 42 U.S.C. § 2000e-5(f)(1). Here, Plaintiff received the right to sue letter from his first charge on January 23, 2009- giving him until April 23, 2009, to file suit based on the allegations in his first charge. (See doc. no. 12, p. 8.) Plaintiff filed the instant action on September 20, 2010, and therefore, any claims based on his first charge are time-barred. Plaintiff's second charge covers events that occurred between January 23, 2009, and July 22, 2009, whereas Plaintiff's third charge covers his firing which occurred on June 4, 2010. (Id. at pp. 9-10.) As such, any of Plaintiff's claims based on events that occurred prior to January 23, 2009, were either covered by Plaintiff's first charge and therefore time-barred, or have not been filed with the EEOC and are therefore barred as unexhausted. This includes Plaintiff's allegations of sexual harassment by Strowbridge, as well as his allegation of hostile work environment based on that sexual harassment, all of which allegedly occurred between May 2006 and July 2007. (See doc. no. 8, p. 7.)

---

[3]The elements required to support a cause of action for a hostile work environment claim based on sexual harassment under Title VII are the same as those needed to establish a prima facie case of *quid pro quo* sexual harassment. See Webb-Edwards, 525 F.3d at 1026 (citations omitted).

### ii. Retaliation Claims

Additionally, Plaintiff's allegations that he was harassed by several supervisors, had a portion of his pay withheld, had a request for leave denied, was denied a promotion, and experienced a delay in medical care for an on-the-job injury, are insufficient to state a claim for retaliation. To support a cause of action for retaliation under Title VII, a plaintiff must show: 1) he engaged in statutorily protected activity; 2) an adverse employment action occurred; and 3) the adverse action was causally related to the plaintiff's protected activities. Gregory, 355 F.3d at 1279.

Here, Plaintiff has simply presented a list of actions related to his work at AYDC, which negatively impacted him in some manner, thus satisfying the requirement of an adverse employment action. However, nowhere does Plaintiff allege that these adverse actions were causally related to any statutorily protected activity that he engaged in. Therefore, these allegations cannot support a cause of action for retaliation.

### iii. Claims Against Augusta Youth Development Campus

State agencies can be sued directly for violations of Title VII, and thus, the DJJ is a proper defendant in the instant action. See Allen v. Alabama Bd. of Educ., 816 F.2d 575, 577 (11th Cir. 1987). However, AYDC is a facility that is state-owned, and it is operated by the DJJ. Georgia Department of Justice Annual Report 17 (2005), *available at* http://www.djj.state.ga.us/ReferenceLibrary/_PDFfiles/FY2005AnnualReport.pdf. Therefore, as the DJJ is already a defendant in this action, it is redundant and unnecessary to keep AYDC as a defendant in Plaintiff's Title VII claims. See Johnson v. Waters, 970 F.

Supp. 991, 1005 (M.D. Ala. 1997) (finding that where a plaintiff had effectively sued a county, it was redundant to keep the county commission and its members as defendants). This is analogous to the longstanding principle in the Eleventh Circuit that, when a state agency is party to a Title VII suit, claims against state officials arising out of the same conduct are redundant. See United States v. Olavarrieta, 812 F.2d 640, 643 (11th Cir. 1987); Blackledge v. Alabama Dep't of Mental Health & Mental Retardation, CV 206-321, 2007 WL 3124452 at *8-9 (M.D. Ala. 2007).

## IV. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's claims based on events occurring prior to January 23, 2009- including his claims for sexual harassment and hostile work environment- Plaintiff's claims for retaliation based on his allegations that he was harassed by several supervisors, had a portion of his pay withheld, had a request for leave denied, was denied a promotion, and experienced a delay in medical care for an on-the-job injury, and the Augusta Youth Development Campus be **DISMISSED**.[4]

SO REPORTED AND RECOMMENDED on this 24th day of May, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[4]In a simultaneously filed Order, the Court has directed that service of process be effected upon the DJJ based on Plaintiff's claim that he was subjected to retaliation as a result of filing a sexual harassment claim, as well as complaints of discrimination.

8